**UNITED STATES of America,
Defendant, Appellant,**

v.

**Adalberto VELEZ TIRADO et al.,
Plaintiffs, Appellees.**

**No. 6628.**

United States Court of Appeals
First Circuit.

Heard Feb. 6, 1966.

Decided March 22, 1966.

940

Morton Hollander, Atty., Dept. of Justice, with whom John W. Douglas, Asst. Atty. Gen., Francisco A. Gil, Jr., U. S. Atty., and Martin Jacobs, Atty., Dept. of Justice, were on brief, for appellant.

Harvey B. Nachman, San Juan, P. R., with whom Nachman & Feldstein, San Juan, P. R., was on brief, for appellees.

Before ALDRICH, Chief Judge, COFFIN, Circuit Judge, and CANCIO, District Judge.

PER CURIAM.

This is an appeal from a judgment for plaintiffs in an action to recover for personal injuries and property damage resulting from a collision between an automobile owned by one plaintiff and driven by another [1] and a truck owned by the United States and operated by a military employee. The suit was brought under the Federal Tort Claims Act, with the Puerto Rico comparative negligence statute being applicable.[2] By stipulation, the case was submitted to the district court on résumés of the probable testimony of witnesses had they been called to testify.

The résumés of testimony sharply conflict but, taking the evidence most favorable to plaintiff, the accident took place as follows: The plaintiff was driving at a relatively low rate of speed a sedan which, because of a poor clutch, could not go into high gear. His left arm was resting on the window sill. At a crest of a hill, he saw defendant's truck coming around a curve at about forty miles an hour, swaying and zigzagging in the center of the highway. The road being narrow, plaintiff blew his horn, turned to the right, driving close to a fence. The truck continued in the center of the road and its protruding box and rear wheels scraped along the entire left side of the sedan, injuring plaintiff's left arm.

A tourniquet was applied to plaintiff's arm and it was later amputated. The permanent impairment to the arm was 95 per cent, with American Medical Association tables indicating a 57 per cent total disability for "the whole man". Plaintiff's life expectancy was 45.81 years. His average annual wage was between $3,000 and $4,000. On the day following the accident he was to have taken a job as truck driver, guaranteeing a minimum wage of $90.00 a week.

The district court, rejecting to some extent the evidence summarized above,

1. Reference will hereafter be made only to the plaintiff in the singular, and shall refer to the operator of the vehicle.

2. 31 Laws of Puerto Rico Ann. § 5141 (Supp.1964) reads in part: "Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity."

found both operators negligent with plaintiff's negligence quantified at 40 per cent and defendant's at 60 per cent.[3] It further found that the 95 per cent impairment of plaintiff's arm and 57 per cent total disability "has no additional bearing on the loss of earning potential". It assessed personal injury damages at $46,800.00.[4]

Defendant urges, first that the district court's subsidiary findings (see footnote 3, supra) indicate that plaintiff was more than 50 per cent negligent, and therefore could not recover even under the Puerto Rican statute. Without considering the latter assumption[5], we fail to see how the subsidiary findings can be translated into quantifiable terms, nor has any authority been cited to us for so attempting. So far as we can know, the "unsafe speed" of the government vehicle was a greater contribution to the collision and injuries than plaintiff's failure to stop or pull over and failure to move his elbow inside the car. Certainly the facts as viewed most favorably for the plaintiff and set forth above support the district court's finding of 40 per cent negligence on his part and 60 per cent on the part of defendant. There is no such clear showing of error on this issue as to warrant our intervention.

Defendant's second contention is that the court committed reversible error in its computation of damages.[6] The disputed element is the amount of $38,000.00 for future loss of earnings. The evidence most favorable for the plaintiff, however, was that his average income was between $3,000.00 and $4,000.00 a year, with his new job promising approximately $4,500.00 a year. If the $3,000.00—$4,000.00 range is used, his total income would be between $138,000.00 and $184,000.00 for the period of 46 years, or when reduced by 40 per cent, $82,800.00 to $110,400.00. The district court's figure of $92,000.00 is well within this range. Even if the 46 years expectancy is reduced to 38 years on the assumption that plaintiff would not work beyond the age of 65, the $4,000.00 figure, reduced by 40 per cent, would still produce a total income of $91,200.00,

---

3. Its findings describing the negligence of both parties were the following:

"7. — The truck owned by the United States of America was travelling at a rate of speed which was unsafe in the particular circumstances and the driver of the Government vehicle was negligent.

"8. — The plaintiff, Adalberto Velez Tirado, was likewise negligent in failing to stop or pull over and to move his elbow inside the car."

4. It arrived at this figure as follows:

| | | |
|---|---|---|
| Value of medical services (60% of $3,000) | | $1,800.00 |
| Pain, suffering, and mental anguish (after percentage reduction) | | $7,000.00 |
| Loss of earnings: | | |
| Yearly earnings, reduced by 40% | $2,000.00 | |
| Working expectancy | 46 years | |
| Total lifetime earnings | $92,000.00 | |
| Present value, using 4½% discount rate, $38,576.80, rounded to | | $38,000.00 |
| Total personal injury damages | | $46,800.00 |

---

5. But see Juan Ramon Acosta Vargas et al. v. Juan Angel Tio, 86 D.P.R. —— (Feb. 11, 1963).

"* * * [W]e will say definitively that where the concurrence of negligence has been established as the cause of the damage defendant shall be bound to compensate that part of the damage in proportion to his own negligence."

6. Much is made of an arithmetical error and assumptions in an original computation. Subsequently, however, this court granted a motion of defendant to allow reconsideration and recomputation. We are therefore now concerned only with the correctness of the final decision. We test this by its relation to the evidence, not by its relation to an earlier decision which has been superseded.

which is substantially the same figure ($92,000.00) used by the district court. We cannot say that the result arrived at by the district court was clearly erroneous.

Finally, defendant challenges the court's "implicit finding" that plaintiff is totally disabled, by relying on the figure of 57 per cent total disability. But the résumé of expert testimony in the record —the only evidence bearing on the issue —is that " * * * there is little work that the plaintiff could perform, other than to act as a messenger or some specialized type of clerical employment; that he could no longer operate effectively a motor vehicle or perform any of the jobs for which has been trained or in which he has experience." There is no evidence of the availability of employment in Puerto Rico for one so handicapped. Nor do we feel called upon to try to take judicial notice of the job market in Puerto Rico for unskilled, one armed men. We do not, in other words, feel that the district court was plainly wrong in saying that the less than 100 per cent disability estimate "has no additional bearing on the loss of earning potential" or in assuming that plaintiff was left with no effective earning capacity.

Affirmed.